IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATIONAL CASUALTY COMPANY,

                Plaintiff,

    v.

UTICA MUTUAL INSURANCE COMPANY,

                Defendant.

OPINION AND ORDER

12-cv-657-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff National Casualty Company filed this lawsuit in state court in Wisconsin, seeking a declaration that the rules of professional conduct for Pennsylvania and New York lawyers prohibit defendant Utica Mutual Insurance Company from using the law firm Hunton & Williams from representing defendant in arbitration proceedings against plaintiff in New York.  Defendant has removed the case to federal court under 28 U.S.C. §§ 1441 and 1446.

      "The first question in every case is whether the court has jurisdiction."  <u>Avila v. Pappas</u>, 591 F.3d 552, 553 (7th Cir. 2010).  In its notice of removal, defendant says that jurisdiction is present under 28 U.S.C. § 1332, but I cannot make that determination from defendant's allegations in the notice.

      To establish jurisdiction under § 1332, a party must show that the plaintiff and defendant have diverse citizenship and the amount in controversy is greater than $75,000.

1

With respect to citizenship, defendant alleges that it is a New York corporation and that New York is the location of its principal place of business; it alleges that plaintiff is a Wisconsin "company" and that Wisconsin is plaintiff's principal place of business. Dkt. #1, ¶¶ 5-6. If both plaintiff and defendant are corporations, these allegations are sufficient to show diverse citizenship. Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C., 385 F.3d 737, 740-43 (7th Cir. 2004) (corporation is citizen of its state of incorporation and state where its principal place of business is located). Although it seems likely that plaintiff is a corporation, defendant's ambiguous allegation that plaintiff is a Wisconsin "company" leaves room for doubt. The distinction is important because courts determine the citizenship of unincorporated business entities differently. Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998).

A second question relates to the amount in controversy. Defendant says that "the amount in dispute in the arbitration, and the additional expenses Utica will incur if Utica is ordered to obtain new counsel" are greater than $75,000. Dkt. #1, ¶ 8. Defendant does not explain further, but presumably it is relying on two general rules. First, "[i]n the context of actions to compel arbitration, [the court of appeals has] adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute." America's MoneyLine, Inc. v. Coleman, 360 F.3d 782, 786 (7th Cir. 2004). Second, when the plaintiff is seeking a declaration, the amount in controversy is measured by "the value of the object of the litigation," Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347

(1977), that is, "what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." Macken ex rel. Macken v. Jensen, 333 F.3d 797, 799-800 (7th Cir. 2003).

An initial problem with defendant's reliance on these rules is that it does not identify "the amount in dispute in the arbitration" or the amount that it would cost to replace its counsel. Although defendant does not need to provide detailed evidence, it needs at least a good faith basis for its belief that the amount in controversy is met. Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC, 589 F.3d 881, 886 (7th Cir. 2009).

A second problem is that defendant seems to be assuming that it may satisfy the amount in controversy requirement with some combination of the "the amount in dispute in the arbitration" and the amount that it would cost to replace its counsel, but it cites no authority for that proposition. These two amounts represent different ways of valuing the dispute, so it is not clear why defendant would be entitled to add the amounts together.

Third, it is not clear whether the rule of America's Moneyline should apply to this case at all. Neither side is trying to compel arbitration or challenging a decision of the arbitrator. Rather, the parties are debating an issue about how the arbitration should proceed.

Because I have an independent obligation to insure that jurisdiction exists, Booker-El v. Superintendent, Indiana State Prison, 668 F.3d 896, 899 (7th Cir. 2012), I must resolve these questions before turning to the pending motions. Accordingly, I will give defendant an opportunity to address the questions about citizenship and the amount in controversy.

A review of plaintiff's complaint reveals a separate issue not addressed by the parties. In particular, it is not clear what authority this court has to entertain plaintiff's request to disqualify defendant's counsel in the context of another proceeding. Most requests for disqualification occur in the context of a larger lawsuit brought under an independent cause of action. Cromley v. Board of Education of Lockport Township High School District 205, 17 F.3d 1059, 1064 (7th Cir. 1994) (§ 1983 lawsuit); Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983) (antitrust lawsuit); Silicon Graphics, Inc. v. ATI Technologies, Inc., 741 F. Supp. 2d 970, 978 (W.D. Wis. 2010) (patent lawsuit). The authority to grant those requests comes from a federal court's inherent power to regulate its own cases. Silicon Graphics, 741 F. Supp. 2d at 980. In this case, the parties cite no law giving this court or any other the authority to enforce a state's rules of professional conduct in a freestanding lawsuit regarding conduct in another forum.

Although the Federal Arbitration Act creates a cause of action for various disputes that arise in arbitration, a dispute about counsel is not one of them. 9 U.S.C. § 4 (order to compel arbitration); 9 U.S.C. § 5 (order to appoint arbitrator); 9 U.S.C. § 7 (order to compel attendance of witness); 9 U.S.C. § 9 (order to confirm arbitration award); 9 U.S.C. § 10 (order to vacate arbitration award); 9 U.S.C. § 11 (order to modify arbitration award). The only statute plaintiff cites in its complaint relates to declaratory judgments generally, but a request for a declaratory judgment is not an independent cause of action, at least not in federal court. Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d. Cir. 2012); Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011); Davis v. United States, 499 F.3d 590, 594

4

(6th Cir. 2007); <u>Okpalobi v. Foster</u>, 244 F.3d 405, 424 (5th Cir. 2001); <u>Akins v. Penobscot Nation</u>, 130 F.3d 482, 490 (1st Cir. 1997).

I will give both sides an opportunity to address the question whether this court has authority to enforce Pennsylvania's and New York's rules of professional conduct in the context of this case. In addition, the parties should discuss whether this is a jurisdictional question that must be decided first or whether it is a merits question that should be decided after the issues related to personal jurisdiction and venue are resolved.

ORDER

IT IS ORDERED that

1. Defendant Utica Mutual Insurance Company may have until November 21, 2012, to file supplemental materials showing that subject matter jurisdiction is present under 28 U.S.C. § 1332.

2. Both sides may have until November 21, 2012, to file supplemental materials on the question whether this court has authority to enforce Pennsylvania's and New York's rules of professional conduct in the context of this case.

3. If the parties do not respond by November 21, I will remand the case to the state court.

Entered this 8th day of November, 2012.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge