IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATIONAL CASUALTY COMPANY,

                Plaintiff,

OPINION AND ORDER

12-cv-657-bbc

    v.

UTICA MUTUAL INSURANCE COMPANY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff National Casualty Company filed this civil action in state court in Wisconsin seeking a declaration that the rules of professional conduct for Pennsylvania and New York prohibit the law firm of Hunton & Williams from representing defendant Utica Mutual Insurance Company in an arbitration proceeding against plaintiff in New York. Defendant removed the case to federal court under 28 U.S.C. §§ 1441 and 1446. The case is before the court on defendant's motion to dismiss for failure to state a claim or in the alternative, to change venue or stay the action, dkt. #7, and Employers Insurance Company of Wausau's motion to intervene. Dkt. #12.

In an order dated November 8, 2012, dkt. #30, I concluded that I could not resolve these motions because questions remained about the existence of subject matter jurisdiction. Defendant relied on 28 U.S.C. § 1332 as a basis for jurisdiction, but I could not determine from the parties' filings whether plaintiff and defendant have diverse citizenship and whether

1

the amount in controversy is greater than $75,000, which are requirements under § 1332.

Defendant filed a response to the November 8 order, from which I conclude that it has not established that it has a good faith basis for believing that it satisfies the amount in controversy requirement of § 1332. Defendant has not explained why the value of this litigation is the amount at stake in arbitration or why the cost of replacing arbitration counsel would exceed $75,000. Because defendant has not shown that jurisdiction is present, I have no authority to decide the remaining motions. The case must be remanded to the Circuit Court for Marathon County.

The background facts set forth below are taken from the complaint and exhibits attached to the parties' briefs.

## BACKGROUND

Plaintiff National Casualty Company is an insurance company organized under the laws of Wisconsin with its principal place of business in Marathon County, Wisconsin. Defendant Utica Mutual Insurance Company is a New York corporation with its principal place of business in New York.

The parties entered into several reinsurance contracts in which plaintiff agreed to reinsure certain policies defendant issued to one of its customers, Morton-Norwich Products, Inc. Employers Insurance Company of Wausau acted as another reinsurer of defendant and is also a party to these contracts. The contracts contained the following provision:

> Any dispute or other matter in question arising between the Reassured and the
> Reinsurers out of or relating to the interpretation, performance, or breach of

>this contract shall be settled by arbitration.
>. . . .
>The arbitration hearings shall be held in Utica, New York, or such other place as may be mutually agreed.

Aff. of Melissa Weldon, dkt. #32, at 9, ¶ 16.

Morton-Norwich submitted certain claims to defendant, which became the subject of litigation between the two. (The parties do not describe the nature of the claims or litigation.) The law firm of Hunton & Williams LLP represented defendant in that litigation, which ultimately settled. (The parties do not provide the terms of the settlement.)

On April 29, 2011, defendant submitted a bill to plaintiff for $351,449.58, the amount defendant argues the reinsurance contracts require plaintiff to pay for defendant's settlement of the underlying Morton-Norwich claims. Upon receiving defendant's reinsurance billings, plaintiff raised various questions about its obligation to reimburse defendant and requested information from it. After executing a confidentiality agreement, defendant turned over some information to plaintiff. Plaintiff alleged that defendant did not provide it with all the records to which it was entitled under the contracts and refused to pay the bill.

On May 24, 2012, Hunton sent a letter to plaintiff informing it that Hunton represented defendant with respect to the billing dispute and demanding arbitration. On July 23, 2012, plaintiff informed defendant that it would not proceed to arbitration until Hunton withdrew its representation of defendant because of an alleged conflict of interest. This conflict arose purportedly because (1) Hunton represented both plaintiff's and defendant's "interests" in the underlying Morton-Norwich litigation (plaintiff does not

explain how Hunton represented plaintiff's interests); (2) part of the fee defendant sought to recover was a fee for that litigation; and (3) it was likely that Hunton's attorneys would be witnesses in the proceeding.  Decl. Syed S. Ahmad, dkt. #26-2.

When defendant refused to hire new counsel, plaintiff filed this action in the Circuit Court for Marathon County, Wisconsin, on July 26, 2012, seeking disqualification.  On September 11, 2012, defendant removed this case to federal court.  In the interim, on August 16, 2012, defendant filed a parallel suit regarding disqualification in the Northern District of New York and named both plaintiff and Employers as defendants.

OPINION

"The first question in every case is whether the court has jurisdiction."  Avila v. Pappas, 591 F.3d 552, 553 (7th Cir. 2010).  Courts have an independent obligation to make sure that it is present.  Booker-El v. Superintendent, Indiana State Prison, 668 F.3d 896, 899 (7th Cir. 2012).  In an action removed from state court under 28 U.S.C. § 1332, a defendant must show that (1) the parties are completely diverse in their citizenship; and (2) the amount in controversy exceeds $75,000.  St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938) (the party seeking to invoke federal jurisdiction has the burden of proving its existence).  In determining whether removal is proper under 28 U.S.C. § 1441, a district court must construe the removal statute narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand.  Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 758 (7th Cir. 2009).

A. Diversity of Citizenship

Defendant left room for doubt as to the parties' citizenship in its notice of removal. It alleged that it is a New York corporation with its principal place of business in New York and that plaintiff is a Wisconsin "company" with its principal place of business in Wisconsin. Dkt. #1 ¶¶ 5-6. Because courts determine the citizenship of unincorporated and incorporated business entities differently, Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998), I asked defendant to identify what type of company plaintiff is. Defendant submitted a declaration to the effect that plaintiff is a Wisconsin corporation. Dkt. #24 at 2. Because it is now clear that the parties have diverse citizenship, Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C., 385 F.3d 737, 740-43 (7th Cir. 2004) (corporations are diverse if they share neither a state of incorporation or principal place of business), I turn to the amount in controversy.

B. Amount in Controversy

In its notice of removal, defendant stated that "the amount in dispute in the arbitration, and the additional expenses Utica will incur if Utica is ordered to obtain new counsel" are greater than $75,000. Dkt. #1, ¶8. In the November 8 order, I ordered defendant to show cause why the case should not be dismissed for lack of subject matter jurisdiction and explained why that statement was inadequate to show that jurisdiction is present. Dkt. #30. First, defendant did not identify the amount in dispute in the arbitration or the cost of replacing arbitration counsel. Second, defendant seemed to assume

5

that it could satisfy the amount in controversy by combining the two amounts, without citing any authority for that approach or even explaining why it would be appropriate to do so. Finally, it was unclear whether the stakes of the upcoming arbitration are an appropriate measure because this is not an action to compel arbitration and no arbitration proceeding is pending. America's Money Line, Inc. v. Coleman, 360 F.3d 782, 786 (7th Cir. 2004) (holding that in actions to compel arbitration, "the appropriate focus is the stakes of the underlying arbitration dispute").

In its response, defendant has not argued either that it is appropriate to determine the amount in controversy by combining the stakes of the underlying arbitration with the cost of replacing counsel or why the court should choose one approach over the other. Instead, it argues that it satisfies the amount in controversy in either case.

Generally, the amount in controversy alleged by a plaintiff in good faith will be determinative on the issue of the jurisdictional amount unless it appears to a legal certainty that the claim is for less than that required by the statute. Rexford Rand Corp. v. Ancel, 58 F.3d 1215, 1218 (7th Cir. 1995). However, in removal cases, if the court or the opposing party challenges jurisdiction, the party seeking to invoke jurisdiction bears the burden of supporting its allegations by "competent proof." Meridian Security Insurance Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006); NLFC, Inc. v. Devcom Mid-America, 45 F.3d 231, 237 (7th Cir. 1995) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

The "competent proof" standard requires proponents of jurisdiction to prove by a

preponderance of the evidence "facts that suggest the amount-in-controversy requirement is met," such as the economic effect of compliance with a decision. Oshana v. Coca-Cola Co., 472 F.3d 506, 511 (7th Cir. 2006) (citing Meridian Security Insurance Co., 441 F.3d at 541). Once a party has proven these facts, the court will defer to the party's estimations and the case will stay in federal court "unless it is legally certain that the controversy is worth less than the jurisdictional minimum." Meridian Security Insurance Co., 441 F.3d at 542 (citing St. Paul Mercury Indemnity Co., 303 U.S. at 289).

Although the party is not required to provide detailed evidence, Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC, 589 F.3d 881, 886 (7th Cir. 2009), a court does not have to accept "bare allegations based on information and belief" as establishing the existence of jurisdictional amount. Breault v. Feigenholtz, 380 F.2d 90, 92 (7th Cir. 1967). The Court of Appeals for the Seventh Circuit has suggested that the standard could be met by "affidavits from the defendant's employees or experts[] about how much it would cost to satisfy the plaintiff's demands." Meridian, 441 F.3d at 541-42. A party's good-faith estimate will suffice only "if it is plausible *and* adequately supported by the evidence." Blomberg v. Service Corp. International, 639 F.3d 761, 763 (7th Cir. 2011) (emphasis added); Oshana, 472 F.3d at 511.

With respect to the stakes of the arbitration, $351,449.58 obviously exceeds $75,000 and would satisfy the jurisdictional minimum if this were an action to compel arbitration. Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977) (amount in controversy may be measured by "the value of the object of the litigation");

7

America's Money Line, 360 F.3d at 786 (in actions to compel arbitration, value of object of litigation is stakes of underlying arbitration dispute.). However, defendant never explains why it believes the stakes of the arbitration provide the amount in controversy in this case. After all, the object of *this* litigation is disqualification of counsel, not compelling arbitration or confirming an award. Although the parties may hope to obtain a particular outcome when and if an arbitration proceeding begins, that matter is outside the scope of this case. Particularly because defendant does not provide a persuasive argument in support of the "stakes of the arbitration" approach, I decline to adopt it and turn to the cost of replacing counsel to satisfy the amount in controversy.

Defendant has not demonstrated a good faith basis for believing it would incur more than $75,000 to replace counsel for its upcoming arbitration with stakes of $351,449.58, plus interest. In its brief, defendant states that "Utica Mutual's good faith belief is that the cost to replace the firm would exceed $75,000. Accordingly, under the 'object of the litigation' test, the amount in controversy . . . is satisfied." Dkt. 34 at 4. In a footnote, defendant states that this belief is based on "related litigation between Morton and Utica Mutual, all of which resulted in exposure to Utica Mutual exceeding $70 million" and "35 cases filed against Morton" for underlying liability claims. Id.

This allegation falls well short of demonstrating that defendant has a good faith basis for believing that replacing counsel would cost more than $75,000. Defendant submitted no evidence to support its belief that it would incur more than that amount in this situation, such as an affidavit describing the work replacement counsel would need to perform and

estimating the billing rate. Meridian, 441 F.3d at 541-42. Defendant's reference to past litigation and liability exposure is not probative because defendant does not explain how these figures relate to the cost of replacing counsel for the upcoming arbitration. I conclude that defendant has not demonstrated a good faith basis for its belief, so the burden does not shift back to plaintiff to show to a "legal certainty" that the cost would be $75,000 or less. Id. (after proponent of jurisdiction proves factual allegations, case will remain in federal court unless it is legally certain that controversy will not meet jurisdictional floor). Accordingly, I conclude that defendant has failed to meet its burden to show that jurisdiction is present under § 1332 and I will remand the case to state court.

ORDER

IT IS ORDERED that, on the court's own motion, this case is REMANDED to Circuit Court for Marathon County, Wisconsin for lack of subject matter jurisdiction. The clerk of court is directed to transmit the record to the circuit court promptly.

Entered this 12th day of December, 2012.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge